Argued and submitted January 28, reversed and remanded October 26, 2011

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JAMES RAYMOND BENSON,
*Defendant-Appellant.*

Wasco County Circuit Court
0800259M; A141929

265 P3d 58

Lindsey K. Detweiler, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Pamela Johnstone Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for harassment. ORS 166.065 (2007).[1] He contends that the trial court erred when it caused him to invoke his right to remain silent in the presence of the jury by asking him if he understood that he had a constitutional right to testify and was choosing not to do so. We reverse and remand.

The pertinent facts are undisputed. Ferrell, an employee of Home Depot, assisted defendant for approximately four hours while defendant was shopping in the store. Over that time, defendant made numerous obscene comments and jokes directed at Ferrell and her coworker. After Ferrell had helped load defendant's merchandise onto his truck, defendant told her that he was going to tell her a joke, grabbed hold of her, asked her the set-up for an obscene joke, and then stuck his tongue in her ear.

Ferrell considers her inner ear to be an intimate part of her body and felt harassed and annoyed by defendant's conduct. She reported the incident to her supervisor, who contacted the police. When the police interviewed defendant, he admitted that he had told obscene jokes to Ferrell and had stuck his tongue in her ear, which led the state to charge him with harassment.

At trial, defendant's counsel argued to the jury that defendant had not acted with the intent to harass or annoy Ferrell, as is required for conviction of harassment, but, instead, had merely been trying to be funny. *See* ORS 166.065 (2007).[2] Defendant did not take the stand to testify to that effect.

---

[1] ORS 166.065 was amended in 2009. Or Laws 2009, ch 783, § 1. However, those amendments do not apply to this case. Or Laws 2009, ch 783, § 16. Accordingly, we apply the 2007 version of the statute, which was in effect when defendant allegedly committed the crime at issue here.

[2] ORS 166.065 (2007) provided, as pertinent:

"(1)  A person commits the crime of harassment if the person intentionally:

"(a)  Harasses or annoys another person by:

"(A)  Subjecting such other person to offensive physical contact[.]

"* * * * *

"(4)  * * * [H]arassment is a Class A misdemeanor if a person violates subsection (1) of this section by subjecting another person to offensive physical contact and the offensive physical contact consists of touching the sexual or other intimate parts of the other person."

After defendant rested, the court engaged in the following colloquy with defendant in the presence of the jury:

"THE COURT:   * * * One thing I do need to make clear, [defendant], you realize you have an absolute right to testify or to not testify. You understand that?

"[DEFENDANT]:   Yeah.

"THE COURT:   And you consulted with your attorney, is that right?

"[DEFENDANT]:   Yes.

"THE COURT:   And it's your desire not to testify here today?

"[DEFENDANT]:   Yes.

"THE COURT:   All right. I'll accept that."

Defense counsel made no objection to the court's colloquy with defendant.

In its instructions, the court told the jury:

"A defendant has an absolute constitutional right not to testify. Therefore a defendant's decision not to testify cannot be considered as an indication of guilt and it should not be commented on or in any way considered by you in your deliberations."

The jury returned a guilty verdict.

On appeal, defendant contends that the colloquy described above violated his right under the state and federal constitutions not to be compelled to testify against himself. He also argues that the colloquy violated OEC 513's requirement that claims of privilege be made, to the extent practicable, without knowledge of the jury. Defendant acknowledges that he did not preserve his assignment of error by objecting to the colloquy. He asserts, however, that we should review the error as plain error.

Under ORAP 5.45(1), we have the discretion to review an unpreserved error of law if it is apparent on the record—that is, if it is plain error. Error is apparent when (1) the error is legal; (2) the legal point is obvious, meaning that it is not reasonably subject to dispute; and (3) the error

appears on the face of the record, such that we need not go outside the record or choose between competing inferences to establish it. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Because we conclude that the court's colloquy with defendant violated OEC 513(2) and constitutes plain error, we do not reach defendant's constitutional claims. We address each of the elements of plain error in turn.

The alleged error indisputably involves a legal question—*viz.*, whether the court's colloquy with defendant violated OEC 513(2). In order to determine whether the alleged error is obvious and not reasonably subject to dispute, we examine its merits. *State v. Godines*, 236 Or App 404, 413, 236 P3d 824, *rev den*, 340 Or 480 (2010).

OEC 513(2) provides that, "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury." The rule applies to constitutional privileges, including the right against self-incrimination, and, thus, it applies to the privilege at issue in this case. *See John Deere Co. v. Epstein*, 307 Or 348, 355, 769 P2d 766 (1989) (holding that constitutional privileges fall within the scope of OEC 513).

The state contends that it is not beyond dispute that the court violated OEC 513(2) because OEC 513(2) must be satisfied only "to the extent practicable." Here, it was unquestionably practicable for the court to excuse the jury before engaging defendant in the colloquy.[3] Thus, the court violated OEC 513(2) by causing defendant to invoke his right to remain silent in the presence of the jury, and that violation was obvious error.

The final element of plain error analysis is that the error appears on the face of the record, such that we need not go outside the record or choose between competing inferences to establish it. Invoking *State v. Gornick*, 340 Or 160, 169-70,

---

[3] The state notes that the jury had recently returned from a recess when the court engaged in the colloquy with defendant and argues that it would have been inappropriate for the court to excuse the jury so recently after its return. Although solicitude for jurors is appropriate, it is not a proper basis on which to reject the requirement imposed in OEC 513(2).

130 P3d 780 (2006), the state argues that competing inferences can be drawn from defendant's failure to object to the colloquy. According to the state, we may infer that defendant's counsel may have had a tactical reason for not objecting—specifically, that he wanted the jury to hear that defendant had a right not to testify. Implicit in that argument is the idea that—having admitted to sticking his tongue in Ferrell's ear—defendant had nothing to gain by testifying, so it would be helpful for the jury to know that he had the right not to testify because that knowledge would guard against the jury drawing an adverse inference from his decision not to testify.

The state's competing-inferences argument is unpersuasive. For plain error purposes, competing inferences must be plausible. *State v. Lovern*, 234 Or App 502, 512, 228 P3d 688 (2010). We cannot conceive of how the court's colloquy could have benefited defendant and, hence, how defendant's counsel could have made a tactical decision to accept the error. Accordingly, we conclude that the error appears on the face of the record and, thus, that the court's colloquy with defendant constituted plain error.

Accordingly, we turn to whether we should exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). In deciding whether to do that, we recognize that correction of an unpreserved error is contrary to the policies requiring preservation and should be undertaken with utmost caution. *Id.* Factors that we may consider in our decision include, but are not limited to,

"the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Id.* at 382 n 6.

The gravity of the error in this case weighs in favor of our exercise of discretion to correct it. Judges wield significant influence over jurors, and jurors are highly sensitive to

statements that judges make and to questions that they pose at trial. *State v. Mains*, 295 Or 640, 657-58, 669 P2d 1112 (1983); *see State v. Medina*, 39 Or App 467, 471, 592 P2d 1042 (1979) (noting that "jurors are highly likely to be influenced by what they perceive as the attitude of the trial judge" toward the parties). That influence makes the error in this case substantial because—as an examination of the colloquy demonstrates—the court's colloquy with defendant may have suggested to the jury that the court believed that defendant's decision not to testify significantly undercut his defense.

After defendant had rested, the court first verified that defendant was aware of his right both to testify and not to testify. It then sought confirmation that defendant had received the advice of counsel with regard to those rights. Finally, it verified that, in light of defendant's awareness of his right to testify and his receipt of advice, he nonetheless had chosen not to testify. Only after the court had received defendant's responses, which indicated that defendant's decision was both deliberate and informed, did the court "accept" defendant's decision not to testify.

The jury could have understood the colloquy to reflect the court's surprise that defendant had rested without testifying. In that light, the jury could well conclude that—if the court felt that defendant's decision not to testify was so inexplicable that the court needed to assure itself that the decision was deliberate and informed, rather than a mistake or oversight on the part of defendant or his counsel—that meant that the court believed that a successful defense depended on defendant's testimony. Under those circumstances, the impression that the jury may have received from the court through the colloquy may have been a determinative factor in the jury's decision to convict defendant. Therefore, the gravity of the error is substantial.

The state nonetheless argues that we should not exercise our discretion to correct the error because the evidence for conviction was overwhelming, making the error harmless. We reject that argument. When, as here, we are unable to conclude that "there was little likelihood that the [error] affected the verdict[ ]," it is appropriate for us to exercise our discretion to correct the error. *State v. Bahmatov*,

244 Or App 50, 55-56, 260 P3d 592 (2011) (exercising our discretion to correct the erroneous admission of evidence because we were unable to determine the weight that the factfinder gave to that evidence). Although there was no dispute that defendant stuck his tongue in Ferrell's ear, the evidence on whether, in doing that, he intended to harass or annoy Ferrell is not overwhelming. In the absence of the court's colloquy, the jury might not have inferred from defendant's actions an intent by him to harass or annoy Ferrell.

The state further contends that any harm that the colloquy caused was remedied by the court's instruction to the jurors that they were not to comment on or take into consideration defendant's decision not to testify. However, the jury instruction failed to remedy the harm that the colloquy caused, *viz.*, the impression that it conveyed to the jurors that the court believed that defendant's decision not to testify had undercut his defense. We are unable to conclude that there was little likelihood that the court's colloquy with defendant affected the verdict, and, thus, we exercise our discretion to correct it.

Reversed and remanded.