Argued and submitted November 27, 2012, convictions on Counts 13, 14, 15, 16, 17, 18, 20, and 21 reversed and remanded; remanded for resentencing; otherwise affirmed February 13, petition for review denied July 25, 2013 (353 Or 868)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KELLY N. PREUITT,
*Defendant-Appellant.*

Deschutes County Circuit Court
09FE0226SF; A145602

296 P3d 648

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Louis R. Miles, Deputy Public Defender, Office of Public Defense Services.

Jeremy C. Rice, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

After a jury trial, defendant was convicted of 12 counts of first-degree sexual abuse, ORS 163.427, two counts of first-degree sodomy, ORS 163.405, one count of second-degree sodomy, ORS 163.395, and two counts of attempted first-degree sodomy, ORS 161.405. He appeals the judgment of conviction, raising two assignments of error. In his first assignment of error, defendant challenges six of the convictions for first-degree sexual abuse and the two convictions for attempted first-degree sodomy. With respect to those convictions, defendant asserts that the trial court erred when it permitted testimony from a therapist regarding, among other things, the therapist's opinion concerning whether the child complainant, K, was "suggestible" or was telling a "story that she had adopted from somewhere else."[1] According to defendant, "[i]n a trial involving allegations of child sexual abuse, without physical evidence, [the therapist's] statements were inadmissible comments on [K's] credibility." In a second assignment of error, defendant asserts that the trial court erred in instructing the jury that it could convict him by a nonunanimous verdict. We reject defendant's second assignment of error without discussion, *see State v. Bainbridge*, 238 Or App 56, 59, 241 P3d 1186 (2010); ORCP 59 H, and write only to address his first assignment of error. As to that assignment, we conclude that at least some of the challenged testimony constituted an impermissible comment on the credibility of a witness and, therefore, we reverse the challenged convictions and remand for a new trial with respect to those charges.

Defendant was charged with, among other things, sexually abusing his step-granddaughter, K. K had disclosed the abuse to her brother and, eventually, the family reported the abuse allegations to the police. K was evaluated at Kids First[2] and described having been sexually abused

---

[1] With respect to his first assignment of error, defendant challenges only "his convictions on counts 13, 14, 15, 16, 17, 18, 20, and 21, in which [K] was named as the alleged victim." To the extent that defendant means to challenge his other convictions, he failed to raise such a challenge in his brief and we, therefore, will not consider it. *See* ORAP 5.45.

[2] According to a witness at trial, Kids First is an "agency that interviews all children of sexual abuse" in the county where K lived at the time the abuse was reported.

by defendant; a physical examination revealed no physical evidence of abuse. As a result of her evaluation, K was referred for therapy with Richards, a contract therapist with Kids First.[3] Richards met with K for 16 therapy sessions over an eight-month period. During her sessions with Richards, K discussed details of the sexual abuse by defendant. Richards diagnosed K with Post-Traumatic Stress Disorder (PTSD) as a result of having been sexually abused.

At defendant's trial, the state presented testimony from Richards regarding K. According to Richards, PTSD is a diagnosis arising from an individual's experience of "a traumatic event or an extreme stressor." Richards described the criteria for diagnosing PTSD and stated that she had arrived at that diagnosis for K based on

"her hyper-arousal, her sleep difficulties, her kind of avoiding thinking about [the sexual abuse], [her] intrusive thoughts [regarding the abuse]. She had lots of nightmares. * * *[S]he had lots of trouble concentrating at school.

"* * * [T]he sleep problem, the nightmares, the avoiding of situations, the cues that * * * triggered her kind of emotional flooding, I would say, where she would perceive that maybe [defendant] was around or she thought she heard his voice or saw a car that was like his and she would just become kind of overwhelmed with anxiety. Those are primarily the symptoms * * *."

During a session with Richards, K drew a picture that depicted defendant's bedroom. As part of her testimony, Richards discussed K's explanation of the picture, and the things that, to her, "stood out" about it:

"One is her description of the towel. And in my notes I also talk about that she, she describes her grandfather as being able to know when the white stuff would come out, and then he would grab the towel. And that's the kind of detail that's really hard for a kid to make up or know without—"

Richards also testified that she had no "concerns or red flags that the, the story that, the statement that [K told about the

---

[3] Richards testified that, when a child comes to Kids First based on allegations of sexual abuse and it is determined that "something indeed has happened," the child is referred to a therapist.

abuse] was some story that she adopted from somewhere else" and that there was nothing "about [K] that [Richards] observed that made [K] seem particularly suggestible."

On appeal, defendant contends that the trial court erred when it allowed Richards's testimony "regarding her opinion of the 'details' of a picture drawn by [K], her opinion as to whether [K] told her story 'from somewhere else,' and her opinion as to whether [K] was 'suggestible.'" As noted, defendant contends that those statements were inadmissible comments on K's credibility.

With regard to Richards's statement regarding the detail in K's picture, the state asserts that defendant failed to preserve the asserted error. The state points out that the trial court actually sustained defendant's objection to Richards's explanation of the significance of the details included in the picture:

"[PROSECUTOR]: And as, as she was drawing that and explaining to you what she was drawing, what about that that picture stood out to you?

"[RICHARDS]: Um, well a couple of things. One is her description of the towel. And in my notes I also talk about that she, she describes her grandfather as being able to know when the white stuff would come out, and then he would grab the towel. *And that's the kind of detail that's really hard for a kid to make up or know without—*

"[DEFENDANT]: Objection, Your Honor.

"* * * * *

"THE COURT: Ask another question * * *.

"[PROSECUTOR]: So the, the detail she was providing to you stood out—

"[DEFENDANT]: Objection, leading.

"THE COURT: Sustained."

(Emphasis added.) According to the state, "[d]efendant could have, but did not seek to limit the jury's consideration of Richards' * * * statement. He did not move to strike, move for mistrial, or seek a curative instruction." Furthermore, "[o]nly after completing his cross-examination did defendant

move for a mistrial. But defendant does not challenge the trial court's denial of that motion and, in any event, his motion was not timely." Defendant, for his part, points out that the trial court has a duty, *sua sponte*, to strike comments on credibility. *See B. A. v. Webb*, 253 Or App 1, 12, 289 P3d 300 (2012) ("[T]rial courts are obligated, *sua sponte*, to exclude and, if necessary, strike testimony that comments on a witness's credibility."). As explained below, we conclude that the other two statements at issue constituted comments on the credibility of a witness and that, therefore, the trial court erred in admitting them. Because we reverse and remand on that basis, we need not address Richards's statement regarding the details in K's picture.

"[I]n Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983); *see State v. Keller*, 315 Or 273, 285, 844 P2d 195 (1993) ("Once again, we repeat that a witness may not testify about the credibility of another witness."); *State v. Milbradt*, 305 Or 621, 629, 756 P2d 620 (1988) ("The assessment of credibility is for the trier of fact * * *."). "Applying that principle is a straightforward matter when one witness states directly that he or she believes another witness, or that the other witness is honest or truthful. However, statements that fall short of such overt vouching also may be impermissible." *State v. Lupoli*, 348 Or 346, 357, 234 P3d 117 (2010); *see Keller*, 315 Or at 285 (doctor's statement that there was "'no evidence of leading or coaching or fantasizing' during the child's interview at C.A.R.E.S." amounted "to testimony that the child was credible").

In *Lupoli*, the Supreme Court considered whether "expert witnesses at trial improperly 'vouched' for the veracity of children who allegedly had been victims of sexual abuse." 348 Or at 349. "The alleged vouching occurred when the experts testified generally about characteristics of truthful and untruthful children and then testified that statements of the children in question displayed the characteristics of truthful children and lacked characteristics indicative of suggestion, influence, or fantasy." *Id.* A number of health

care professionals testified that the children at issue there had been diagnosed as having been sexually abused. In addition, those experts testified, among other things, that (1) a child's statement included "spontaneous detail that you wouldn't otherwise get"; (2) a child's statements seemed unrehearsed and developmentally appropriate; (3) a child's affect seemed to be very appropriate and did not raise concerns. *Id.* at 353-54. In addition, an expert testified regarding general "characteristics in children's statements" that indicate whether they are suggestible; there was also particular testimony that a child "didn't appear that suggestible" to the expert. *Id.* at 355. The defendant objected to the foregoing testimony, asserting that "it amounted to improper vouching by one witness for the credibility of another." *Id.* at 356. On appeal, he did not assign error to the admission of the sexual abuse diagnoses and, instead, asserted that the testimony of the health care workers describing the manner in which they arrived at their diagnoses "amounted to impermissible comments by one witness on the credibility of another." *Id.* at 357.

The court concluded that the testimony at issue constituted vouching and was, therefore, inadmissible. Although the court observed that "discrete portions" of the testimony might be admissible in some circumstances, those portions of the testimony were "inextricably bound up" with portions that constituted vouching. *Id.* at 362. Generally, observations of a child's physical characteristics or demeanor or general descriptions of "the circumstances that can point to a child's suggestibility or the possibility that the child has been coached" would not be impermissible vouching. *Id.* However, the court observed that, "[e]ven if there were parts of [the] testimony that might be admissible if offered in support of some other kind of diagnosis, or if offered to otherwise assist the jury," none of the testimony could be "meaningfully separated from the context." *Id.* Because there was no physical evidence of sexual abuse, the court concluded that each statement and description was an implicit declaration regarding why the experts had found the child complainants to be credible. Accordingly, the court concluded that the trial court should have excluded all of the testimony in question, including the testimony that

might not have constituted vouching had the context been different.

The court in *Lupoli* relied on its decision in *Keller*. In that case,

> "the defendant had been convicted of sexually abusing a five-year-old child to whom defendant's wife provided in-home daycare. The child had told her mother that the defendant, who had been left alone with the children for about five minutes before the child's mother had arrived to pick her up, had, in those five minutes, touched her genital area. The child was examined by a doctor and received a CARES evaluation."

*Lupoli*, 348 Or at 359. A doctor from CARES was called as a witness for the prosecution at the trial in the case and testified that, among other things in the child's statements "[t]here was no evidence of leading or coaching or fantasizing" and the child was "obviously telling you about what happened to her body." *Keller*, 315 Or at 278-79. The defendant asserted that those statements were impermissible comments on the child's credibility. The court agreed, concluding that "[e]ach of those statements amounts to testimony that the child was credible." *Id.* at 285. Because the doctor was "a trial witness * * * testif[ying] about the credibility of another trial witness, the child," the court concluded that the admission of the testimony was error. *Id.*

Here, as noted, at issue are Richards's statements that she had no "concerns or red flags" that K's story about being abused was a "story that she had adopted from somewhere else" and that there was nothing about K that Richards observed that "made her seem particularly suggestible." According to defendant, those statements, like those at issue in *Lupoli*, were comments on credibility; they "were Richards' interpretations of [K's] statements" and "implied that [Richards] believed what [K] had told her." The state, on the other hand, contends that the statements "were admissible because they explained parts of the basis for Richards' expert diagnosis." As well, the state asserts that the statements were merely "information that was helpful to the jury in making its own decision regarding [K's] credibility."

We agree with defendant that, in view of *Lupoli* and *Keller*, Richards's testimony constituted impermissible vouching. In contrast to the types of testimony that the court in *Lupoli* indicated might be admissible in other circumstances, Richards did not merely describe her observations of K's demeanor or physical characteristics, nor did she merely give general information regarding circumstances that indicate that a child is or is not suggestible. In other words, the information was not merely of the type that would assist the jury in reaching *its own* conclusions regarding the truthfulness of K's testimony. Instead, Richards testified regarding *her own conclusions* regarding K's veracity—that there was nothing about K that made her seem suggestible and that there were no "red flags" indicating that K was adopting her story from another source. Those statements, like the testimony at issue in *Keller* (that there was no "evidence of leading or coaching or fantasizing"), amounted to testimony from Richards that K was credible.

That the testimony in question may have been offered, in part, to explain the PTSD diagnosis is of no moment. Although, as the court in *Lupoli* noted, an expert may ordinarily testify regarding the basis of an admissible diagnosis, 348 Or at 361, a comment on the credibility of a witness does not become admissible merely because it is offered as part of a discussion of a medical diagnosis. The law regarding witness comments on credibility is clear and well understood: the Supreme Court has stated on many occasions that one witness may not comment on the credibility of another witness. *See, e.g., Lupoli*, 348 Or at 357; *Keller*, 315 Or at 284-85; *Milbradt*, 305 Or at 629-30; *Middleton*, 294 Or at 438. Although Richards testified regarding the objective bases by which she determined that K was suffering from PTSD, the state could not offer her comments on K's credibility as further support for that diagnosis.[4]

---

[4] The state also suggests that the testimony in question did not amount to vouching because Richards, at other points in her testimony, explained that she is "not a 'forensic' therapist and, thus, was not tasked with determining whether the alleged abuse occurred." Regardless of Richards's role as a therapist, as we have explained, the statements at issue clearly conveyed that Richards found K to be believable. They were therefore impermissible comments on credibility.

Finally, the state asserts that, even if Richards's statements constituted vouching, any error in admitting the statements was harmless. To advance that position, the state first observes that, "in an attempt to discredit [her] testimony, defendant [on cross-examination] asked Richards about her observation that [K] did not appear 'suggestible' and asked Richards whether her conclusion in that regard might be incorrect." Citing *State v. Camarena*, 208 Or App 575, 590-91, 145 P3d 267 (2006), *aff'd*, 344 Or 28, 176 P3d 380 (2008), the state argues that defendant elicited the same information during his examination of Richards that he now complains of from the state's examination of her and, therefore, he cannot complain about the testimony as elicited by the state.

In *Camarena*, we concluded that certain improperly admitted evidence was harmless where its "content was cumulative of other properly admitted evidence." *Id.* at 590. In particular, among other things, in that case the defendant himself testified to the same facts that were contained in the inadmissible evidence. However, the circumstances presented here are not like those in *Camarena*. In particular, there was not other independent evidence that made Richards's testimony merely cumulative. Here, as noted, the state elicited testimony from Richards that there was nothing about K that "made her seem particularly suggestible." Defendant objected, asserting that the state's questioning called for a comment on K's credibility. However, the court overruled the objection and allowed the testimony. When cross-examining Richards, defendant did indeed bring up that testimony and attempted to address and challenge Richards's conclusion. These circumstances are not the type from which we would conclude that, as a result of examining the witness regarding her prior testimony, defendant cannot

In addition, in a footnote, the state observes that Richards's testimony regarding whether K was adopting her story from another source arose after "defendant, on cross-examination, asked Richards whether children sometimes do 'adopt' stories from others." To the extent that the state is attempting to suggest—without making the argument outright—that defendant somehow opened the door to the testimony at issue or that his cross-examination questions in some other way made the testimony admissible, such an argument would not be well-taken. Under all the circumstances presented here, we would not conclude that defendant's questions regarding the behavior of children in general made admissible the later specific testimony regarding the credibility of the particular child at issue.

show harm. Given that the court had, at that point, already ruled against defendant regarding the admissibility of the testimony and defendant was simply attempting to discredit or undermine that testimony on cross-examination, the challenged evidence was not merely cumulative of other properly admitted evidence.

Second, the state asserts that the statements in question were harmless because, "considered in light of the other evidence presented at trial, it is unlikely that the challenged evidence affected the verdict" because Richards testified that she "had not made a credibility determination regarding [K's] allegations." We are not persuaded. Richards testified that she was not part of the investigation of sexual abuse and that she did not make "a forensic determination" of whether it happened. That testimony did not, however, negate or somehow neutralize her comments on K's credibility. Whether or not it was Richards's job to determine whether K's allegations were true, her testimony indicated that she did, indeed, believe that K was truthful. In a case without physical evidence of abuse, where the credibility of the complainant was of paramount importance, we cannot conclude that the admission of improper vouching evidence was harmless beyond a reasonable doubt. Accordingly, we conclude that defendant's convictions on the charges involving K—his convictions on Counts 13, 14, 15, 16, 17, 18, 20, and 21—must be reversed and remanded for a new trial.

Convictions on Counts 13, 14, 15, 16, 17, 18, 20, and 21 reversed and remanded; remanded for resentencing; otherwise affirmed.