Submitted January 24, affirmed April 27, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARK TIMOTHY MURPHY,
*Defendant-Appellant.*

Klamath County Circuit Court
19CR03656; A173010

510 P3d 269

Defendant was convicted of first-degree invasion of personal privacy, ORS 163.701, based on an incident involving his 15-year-old stepdaughter, D. The key issue at trial was whether defendant had knowingly videorecorded D in the shower or whether he did so accidentally. There was no physical evidence, other than the video, so it was a credibility contest. In that context, a Department of Human Services caseworker testified that she had investigated the incident and, after interviewing the children and adults, concluded the investigation with a determination of "founded for sexual abuse" against defendant. On appeal, defendant contends that the trial court erred in failing to strike the caseworker's "founded" testimony as impermissible vouching. Defendant acknowledges that he did not preserve the claim of error and requests discretionary plain-error review. *Held*: The trial court plainly erred in not striking the testimony, because, on this record, the caseworker was unambiguously vouching for D's credibility, which is impermissible. However, there is little likelihood that the error affected the outcome, because the trial court sitting as factfinder made clear that it was relying on its own credibility assessments in finding defendant guilty. Primarily for that reason, the Court of Appeals declined to exercise its discretion.

Affirmed.

Andrea M. Janney, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.

AOYAGI, J.

Affirmed.

Tookey, P. J., specially concurring.

**AOYAGI, J.**

Defendant was convicted of first-degree invasion of personal privacy, based on an incident involving his 15-year-old stepdaughter. On appeal, he contends that the trial court erred in failing to strike testimony by a Department of Human Services (DHS) caseworker that her investigation of the incident resulted in a determination of "founded for sexual abuse" against defendant. Defendant acknowledges that his claim of error is unpreserved, but he contends that the error is "plain," and he asks us to exercise our discretion to reverse on that basis. As explained below, we conclude that the trial court plainly erred in failing to strike the testimony as impermissible vouching, but we decline to exercise our discretion to correct the error, largely because there is little likelihood that it affected the court's guilty finding. Accordingly, we affirm.

FACTS

Defendant is D's stepfather. When D was 15 years old, an incident occurred in which defendant placed his cell phone in the downstairs bathroom of the family home, where D lived with her mother, siblings, and defendant. The phone was set to videorecord. The phone captured video of D getting undressed in preparation for a shower. A few days later, D's mother found the video in the trash folder on defendant's phone. She recorded a copy of the video with her own phone and took it to the police.

Defendant was indicted on one count of first-degree invasion of personal privacy, ORS 163.701, a Class C felony. As relevant here, that crime is committed when a person "knowingly makes or records a *** visual recording of another person in a state of nudity without the consent of the other person; and *** [a]t the time the visual recording is made or recorded the person being recorded is in a place and circumstances where the person has a reasonable expectation of personal privacy." Here, defendant was alleged to have "unlawfully, knowingly, and without the consent of [D]" made a video recording of D while she "was in a state of nudity and in a place and circumstances where [she] had a reasonable expectation of personal privacy."

Defendant waived a jury trial and proceeded with a bench trial. The only significant fact dispute at trial was whether defendant *knowingly* recorded D. According to D, after dinner, she announced that she was going to shower and asked if anyone needed to use the bathroom first, at which point defendant went into the bathroom, saying that he needed to put in his contacts. When D went into the bathroom to shower, she noticed defendant's backpack on the floor, with his phone in the front mesh pocket. For his part, defendant denied knowing that D was going to shower. He testified that he did not remember D saying anything about showering, but that his wife (D's mother) had said that she was going to shower, and that he put his phone in the bathroom to record his wife. According to defendant's wife, she had been planning to shower in the downstairs bathroom, but D "jumped in" before she got there. Defendant's wife further testified that it would not have been unprecedented for defendant to videorecord her (his wife) in the shower, with or without her permission, as he had done it before. Defendant testified that he soon realized that D was in the shower, rather than his wife; retrieved his phone as soon as D left the bathroom; and deleted the video without viewing it.

One of the witnesses at trial was Vaughn. Her testimony was brief. Vaughn testified that she is a DHS protective services caseworker, that she was called out to investigate a "sexual abuse allegation against [defendant]," that her "role was to assess for child abuse and neglect," that she interviewed the children and adults and "assessed the circumstances in the allegation," and that her investigation "resulted in a founded for sexual abuse against [defendant]," which was "related to the video recording of [D]."[1] The prosecutor then showed Vaughn six exhibits, which she authenticated as photos that she had taken of the bathroom and defendant's backpack. On cross-examination, Vaughn testified that she did not specifically ask D about grooming behavior by defendant but that she did "a full assessment including a non-leading child interview" and "did have

---

[1] DHS rules define "sexual abuse" to include "voyeurism." OAR 413-015-1015(1)(f)(A). By contrast, voyeurism alone would not qualify as "sexual abuse" under the criminal statutes. *See* ORS 163.415 (third-degree sexual abuse); ORS 163.425 (second-degree sexual abuse); ORS 163.427 (first-degree sexual abuse).

significant concerns for grooming type or sexual abuse type behaviors regarding [D's] disclosures of telling the family she was going to be taking a shower and him entering immediately after to place the video device." Finally, Vaughn testified to D being "significantly impacted" by the incident, based on what D said in her interview.

After hearing all of the evidence, the trial court found defendant guilty of first-degree invasion of personal privacy and entered a judgment of conviction.

## ANALYSIS

On appeal, defendant raises a single assignment of error. He contends that the trial court plainly erred by failing to strike Vaughn's testimony that her investigation resulted in a "founded for sexual abuse" determination against defendant. Defendant argues that that testimony constituted impermissible vouching for D's credibility. He acknowledges that his claim of error is unpreserved, and he requests plain-error review. In response, the state argues that Vaughn's testimony did not constitute vouching; that the court therefore did not plainly err by failing to strike it; and that, in any event, we should not exercise our discretion to correct any plain error, because defendant "had a tactical reason not to object" and because the court's speaking verdict made clear that it decided the case based on its own credibility assessments of the witnesses' in-court testimony.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to consider "a plain error." ORAP 5.45(1). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Whether an error is "plain" is an issue of law. *State v. Gornick*, 340 Or 160, 167, 130 P3d 780 (2006). If the trial court plainly erred, it is a matter of discretion whether we will correct it. *Id*.

We begin with the issue of whether the challenged testimony constituted impermissible vouching. "Vouching" refers to the expression of one's personal opinion about the

credibility of a witness. *See State v. Chandler*, 360 Or 323, 330-31, 380 P3d 932 (2016) (discussing history of the "judicially created rule" against vouching). Because credibility determinations are the exclusive province of the factfinder, witnesses are prohibited from expressing a view on whether another witness is "telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983). "[T]he rule against vouching prohibits a witness from making a direct comment, or one that is tantamount to a direct comment, on another witness's credibility." *State v. Black*, 364 Or 579, 585, 437 P3d 1121 (2019). "[T]estimony that constitutes vouching is categorically inadmissible." *Id.* at 587. "Whether proffered testimony constitutes impermissible vouching is measured by whether it conveys one witness's opinion of the truthfulness of another witness, or, instead, provides information that permits the jury to make that determination." *Id.* at 587-88. Ultimately, "[w]hether a witness's statement constitutes impermissible vouching is a legal question." *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019).

When faced with an unpreserved claim of error regarding vouching, our first task is to assess the challenged testimony to determine whether the witness unambiguously vouched, may or may not have vouched (ambiguous), or unambiguously did not vouch. If a witness unambiguously vouched, it is plain error not to have stricken the testimony, even absent an objection. *See State v. Corkill*, 262 Or App 543, 552-53, 325 P3d 796, *rev den*, 355 Or 751 (2014) (listing cases holding that it was plain error not to exclude "true 'vouching' evidence, that is, one witness's testimony that he or she believes that another witness is or is not credible, which a party offers to bolster or undermine the veracity of that other witness").

Conversely, if a witness's testimony was ambiguous—such that the witness may or may not have been vouching—there is no plain error in not having stricken the testimony *sua sponte*, in part because the lack of objection prevented clarification of the testimony. *See, e.g.*, *State v. Harrison*, 267 Or App 571, 577, 340 P3d 777 (2014), *rev den*, 357 Or 164 (2015) (where there was "a reasonable dispute as to whether [the witness] impermissibly vouched for" the alleged child

victim, "the trial court did not plainly err by not *sua sponte* striking the disputed testimony"); *State v. Wilson*, 266 Or App 481, 495, 337 P3d 990 (2014), *rev den*, 356 Or 837 (2015) (where the witness "was not clearly vouching for L's credibility in accusing defendant of sexual abuse, \* \* \* the trial court did not plainly err in failing to strike the testimony *sua sponte*"). And, if the witness unambiguously did not vouch, obviously there is no error, plain or otherwise, in not striking the testimony as vouching. *See, e.g.*, *State v. Hunt*, 270 Or App 206, 213, 346 P3d 1285 (2015) (concluding that the trial court did not plainly err by not striking alleged vouching testimony, because it was not vouching; in context, the witness was explaining his own conduct, not commenting on the alleged victim's credibility).

In this case, it is difficult to see how Vaughn's testimony did not constitute impermissible vouching for D's credibility. The only factual issue in serious dispute was whether defendant knew that D was going to take a shower in the downstairs bathroom when he placed his cell phone in the bathroom with it set to videorecord. There was no relevant physical evidence (beyond the video itself); it was a pure credibility contest. If the factfinder believed D, defendant knew that D was going to take a shower and intended to record her. If the factfinder believed defendant, defendant did not know that D was going to take a shower and intended to record his wife taking a shower.

In that context, Vaughn took the stand and testified that, after interviewing the children and adults, she concluded her investigation with a "founded for sexual abuse" determination against defendant. Because this was a bench trial, it is reasonable to assume that the factfinder was familiar with the legal meaning of "founded" in the DHS context. DHS rules equate "founded" with "substantiated," and the standard is akin to criminal "reasonable suspicion." *Querbach v. Dept. of Human Services*, 308 Or App 131, 135-36, 480 P3d 1030 (2020), *rev allowed*, 368 Or 138 (2021). When a DHS order contains a "founded disposition" of abuse, we review "whether a reasonable person could reach the determination that DHS made," *i.e.*, whether it "was reasonable for DHS to *believe*" that abuse occurred. *Id*. (emphasis added). Notably, if the mere existence of an

abuse allegation was sufficient to give rise to a "founded" disposition, all allegations would be "founded," which is not the case. Where a DHS caseworker relies solely on interviewing the witnesses to determine whether an allegation is "founded"—as opposed to "unfounded" or "unable to determine," OAR 413-015-1010(2)—the caseworker is necessarily making a credibility determination, regardless of the degree of *certainty* required for a "founded" disposition.[2]

Given that Vaughn's "founded for sexual abuse" conclusion was necessarily based solely on her own assessment of the witnesses' credibility after interviewing them, we agree with defendant that the challenged testimony was impermissible vouching. Although Vaughn conveyed her credibility assessment less directly than saying "I believed D," her "founded" statement, in context, was unambiguously a comment on D's credibility. *See Sperou*, 365 Or at 128 ("Not all vouching takes the form of overt statements that a witness is trustworthy. Some vouching is subtler, and certain statements might be vouching in some contexts but not others.").[3] It was not a "direct comment" on D's credibility, but it was "tantamount to a direct comment," and that is equally impermissible. *Black*, 364 Or at 585, 587 (vouching is "categorically inadmissible," and it includes both "direct" comments on another witness's credibility and statements that are "tantamount to a direct comment").

Although not identical, this situation is somewhat similar to those in *State v. Lupoli*, 348 Or 346, 234 P3d 117

---

[2] Relying on the legal standard for a DHS "founded" disposition, the concurrence takes the view that Vaughn might not have been vouching. *See* 319 Or App at 343-44 (Tookey, P. J., specially concurring). We disagree for the reasons explained in the text. At the same time, we recognize that Vaughn's testimony would be even more problematic if the factfinder was unaware of the DHS definition of "founded" and our case law on "founded" dispositions. In a jury trial, jurors would likely rely on the common meaning of "founded," which, if anything, would convey a stronger credibility assessment in D's favor.

[3] In *Sperou*, the court held that testifying witnesses had impermissibly vouched for the complainant in a sex-crime case, where they used the term "victim" to refer to her. 365 Or at 132. The court explained that "the use of the term 'victim' to refer to the complaining witness or other witnesses, in circumstances where the accusers' own testimony is the only evidence that the alleged criminal conduct occurred, conveys the speaker's belief that the accusers are credible." *Id*. It "amounts to vouching, and, where (as here) it is virtually impossible for a witness's use of the term to serve a legitimate, nonvouching purpose, any use of the term is categorically inadmissible." *Id*. at 139.

(2010), and *State v. Milbradt*, 305 Or 621, 756 P2d 620 (1988). Vaughn testified that, as a DHS protective services caseworker, it was her job to investigate and "assess" the allegation against defendant related to the shower-recording incident and that, in that context, she interviewed the witnesses and concluded that the allegation was "founded." In *Lupoli*, 348 Or at 361-62, the court held that healthcare professionals impermissibly vouched for the credibility of child complainants when they testified to why the children's statements (without any physical evidence) led them to diagnose sexual abuse. In *Milbradt*, 305 Or at 629, the court stated, "We have said before, and we will say it again, but this time with emphasis—we really mean it—*no psychotherapist may render an opinion on whether a witness is credible in any trial conducted in this state.* The assessment of credibility is for the trier of fact and not for psychotherapists." (Emphasis in original.).

Here, Vaughn's telling the factfinder that she concluded her investigation with a determination that the allegation was "founded for sexual abuse" against defendant did nothing to help the factfinder make its own credibility determinations. *See Black*, 364 Or at 587-88 ("Whether proffered testimony constitutes impermissible vouching is measured by whether it conveys one witness's opinion of the truthfulness of another witness, or, instead, provides information that permits the jury to make that determination."). Nor did it serve any other apparent legitimate evidentiary purpose. *See Sperou*, 365 Or at 139 (considering the lack of "a legitimate, nonvouching purpose"). It served only to convey Vaughn's assessment of D's credibility to the factfinder. We therefore agree with defendant that the testimony was impermissible vouching and that the trial court plainly erred by not striking it.

Under the particular circumstances of this case, however, we decline to exercise our discretion to correct the error. Because "correction of an unpreserved error is contrary to the policies requiring preservation[,]" we undertake the correction of an unpreserved error "with utmost caution." *State v. Benson*, 246 Or App 262, 267, 265 P3d 58 (2011); *see also Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) ("A court's decision to recognize

unpreserved or unraised error in this manner should be made with utmost caution."). Toward that end, we consider a variety of factors in deciding whether to correct plain error. *See Ailes*, 312 Or at 382 n 6 (identifying factors that may be considered, including "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way").

Here, the most significant factor in our decision is the gravity of the error, specifically our conclusion that there is little likelihood that it affected the outcome in this particular case. *See State v. Digesti*, 267 Or App 516, 524, 340 P3d 762 (2014), *rev den*, 357 Or 111 (2015) (in deciding whether to exercise our discretion to correct plain error, we "consider whether the error was harmless—that is, whether there was little likelihood that the error affected the verdict"); *see also, e.g.*, *State v. Inman*, 275 Or App 920, 936, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) ("[T]he error in this case was not particularly grave, in terms of its likelihood of affecting the verdict."). The charge against defendant was tried to the court, and the trial court explained on the record in detail why it had decided to find defendant guilty. In doing so, the court never mentioned Vaughn's testimony—which was brief and not mentioned by either party in opening statements or closing arguments.[4] More importantly, the court made clear that it had made its own credibility determinations from carefully listening (and relistening) to the in-court testimony of defendant, his wife, and D and that its guilty finding was based on its own credibility determinations.

Some factors weigh in favor of correcting the error, including that this case was a pure credibility contest

---

[4] We also note that, beyond her working for DHS, Vaughn never suggested that she had any special expertise in evaluating the credibility of children or adults in this context or otherwise. *Cf. State v. Ross*, 271 Or App 1, 7, 349 P3d 620, *rev den*, 357 Or 743 (2015) ("In many cases where credibility is critical to the outcome, even a single 'vouching' statement by a witness * * * with years of experience and training in the field of child abuse prevention, can be given considerable weight by the jury.").

among the witnesses and that defendant was convicted of a felony. However, those factors are outweighed by other considerations, including that the error could have been easily corrected (and a retrial avoided) had defendant objected and, more importantly, as discussed, that there is little likelihood that the error affected the outcome.[5] Against the backdrop of the Supreme Court's admonition to exercise the "utmost caution" in reversing convictions based on unpreserved claims of error, *Ailes*, 312 Or at 382, we conclude that the ends of justice would not be served by exercising our discretion in this case. Accordingly, we reject defendant's assignment of error and affirm the judgment of the trial court.

Affirmed.

**TOOKEY, P. J.,** specially concurring.

I agree with the disposition in this case: We should affirm. I write separately because I disagree with the path that the majority takes to get to that disposition.

The issue in this case is whether it was plain error for the trial court, during a bench trial, to not *sua sponte* strike a DHS protective services caseworker's testimony that the result of DHS's investigation was "founded for sexual abuse against" defendant. As the majority correctly notes, an error is "plain" only when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. 319 Or App at 334. I do not believe that there is plain error in this case.

In analyzing that issue, it is important to understand what it means when DHS makes a "founded" disposition. A premise of the majority's analysis is that it is reasonable to assume that the trial court, as factfinder, "was familiar with the legal meaning of 'founded' in the DHS context." 319 Or App at 336. I agree.

---

[5] The state argues that defendant had a strategic reason not to object, and that we should not exercise our discretion for that reason too, but we are unpersuaded by that argument and do not rely on it in deciding not to exercise our discretion.

OAR 413-015-1010 sets forth the standard for Child Protective Services (CPS) assessment dispositions.[1] OAR 413-015-1010(1) provides that "[t]he standard for determining CPS assessment dispositions is reasonable cause to believe." There are three possible dispositions that can result from a CPS assessment under OAR 413-015-1010: "founded," "unfounded," and "unable to determine." OAR 413-015-1010(2)(a) - (c).

A founded disposition means, in pertinent part, that "there is reasonable cause to believe the abuse occurred." OAR 413-015-1010(2)(a). An unfounded disposition means, in pertinent part, that "there is no evidence the abuse occurred." OAR 413-015-1010(2)(b). An "unable to determine" disposition means, in pertinent part, that "there is some indication the abuse occurred, but there is insufficient evidence to conclude that there is reasonable cause to believe the abuse occurred." OAR 413-015-1010(2)(c).

---

[1] OAR 413-015-1010 provides:

"(1) The standard for determining CPS assessment dispositions is reasonable cause to believe.

"(2) The possible CPS assessment dispositions are:

"(a) 'Founded,' which means there is reasonable cause to believe the abuse occurred. 'Founded' is synonymous with 'substantiated' as defined in ORS 418.205 - 418.327.

"(b) 'Unfounded,' which means there is no evidence the abuse occurred. 'Unfounded' is synonymous with 'unsubstantiated' as defined in ORS 418.205 - 418.327.

"(c) 'Unable to determine,' which means there is some indication the abuse occurred, but there is insufficient evidence to conclude that there is reasonable cause to believe the abuse occurred. 'Unable to determine' is synonymous with 'inconclusive' as defined in ORS 418.205 - 418.327 and may only be used in the following circumstances:

"(A) After extensive efforts have been made, the CPS worker is unable to locate the family; or

"(B) After completing a CPS assessment, there is insufficient information to support any other disposition and:

"(i) The alleged victim is unable or unwilling to provide consistent information; or

"(ii) There is conflicting or inconsistent information from collateral contacts or family."

In *Querbach v. Dept. of Human Services*, 308 Or App 131, 135, 480 P3d 1030 (2020), we observed that, as set forth in OAR 413-015-1010, founded is "synonymous with 'substantiated' as defined in ORS 418.205 - 418.327" and that "[t]hose statutes, in turn, define 'substantiated' as 'reasonable cause to believe' that abuse occurred, echoing the rules."

In *Berger v. SOSCF*, 195 Or App 587, 589, 98 P3d 1127 (2004), we explained a "founded" disposition means "only that there is reasonable cause to believe that abuse has occurred." Reasonable cause "is equivalent to reasonable suspicion." *A. F. v. Oregon Dept. of Human Services*, 251 Or App 576, 584, 284 P3d 1189 (2012). Consequently, there is a "very low evidentiary threshold for deciding that a complaint is founded." *Id.* (internal quotation marks omitted). Importantly, in making a founded determination, "the agency decides only whether there is evidence that creates a reasonable suspicion of child abuse; it does not decide whether child abuse in fact occurred or *even probably occurred*." *Berger*, 195 Or App at 590 (emphasis added); *see also Querbach v. Dept. of Human Services*, 308 Or App 131, 137 n 5, 480 P3d 1030 (2020) ("[U]nder *A. F.*, the legal issue before the court was whether a reasonable person could determine that, based on the facts and circumstances known to DHS, *it was reasonable to suspect abuse*; the legal issue, again, was *not* whether a reasonable person could find that the abuse had, in fact, occurred." (First emphasis added; second emphasis in original.)). The determination as to whether abuse occurred is "for the court in a dependency proceeding." *Querbach*, 308 Or App at 136 (internal quotation marks omitted). We also observed in *Berger* that, when faced with a complaint of abuse, "contrary evidence will have, at best, a limited effect on the issue that the agency must decide." 195 Or App at 590.

With that understanding of what it means for DHS to reach a "founded" disposition, I turn to the evidentiary record at the time that Vaughn testified as to the "founded" disposition, so as to put her testimony in the proper context. *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019) ("[C]ertain statements might be vouching in some contexts but not others. Accordingly, it is important to consider each statement in the context in which it was made.").

At trial, Vaughn was the second witness called by the state. The first witness called by the state, Deputy Towery, testified that D's mother had brought the video in question to the police; testified as to the contents of the video; testified as to how and why D's mother had acquired the video from defendant's cellphone; and testified that police

seized defendant's phone and a copy of the video was not located on defendant's phone.

Vaughn then testified as follows:

"Q   Where are you employed, Ms. Vaughn?

"A   Department of Human Services, Child Welfare.

"Q   And in that role what are your duties?

"A   I'm a protective services caseworker.

"Q   So as a result of that did you get called out to a case on April 13th, 2017?

"A   Your Honor, per ORS 3.270, I have to be ordered to testify ***.

"THE COURT:   You are so ordered to testify.

"A   Thank you. Repeat the question for me, please?

"Q   In April of 2017 were you called out on a case involving [D], [D's mother], and [defendant]?

"A   I was.

"Q   What was the nature of that call?

"A   The reported concern was regarding a sexual abuse allegation against [defendant].

"Q   And what was your role in this, then?

"A   My role was to assess for child abuse and neglect so I interviewed children, adults, assessed the circumstances in the allegation.

"Q   And what was the result of that investigation?

"A   It resulted in a founded for sexual abuse against [defendant]."

The majority concludes that Vaughn's testimony that the investigation resulted in a "founded" disposition, "in context, was unambiguously a comment on D's credibility." 319 Or App at 337. I disagree for two overlapping reasons.

First, given the legal significance of a "founded" disposition, it is not the case that Vaughn's testimony reflected that she believed D or found D credible; in fact, Vaughn's

testimony does not even reflect whether D's credibility was involved in making the "founded" disposition. And, as explained above, a "founded" disposition does not reflect a DHS determination that abuse had occurred, or even that it was more likely than not that it had occurred. *See Berger*, 195 Or App at 590 (in determining whether a disposition is founded "the agency decides only whether there is evidence that creates a reasonable suspicion of child abuse; it does not decide whether child abuse in fact occurred or even probably occurred"). Instead, the "founded" disposition here merely reflects that DHS believed it was "reasonable to suspect abuse" after conducting interviews *and*, as we understand it, having been presented with information that defendant surreptitiously recorded a video of his minor stepdaughter in the shower, and that that video had created significant enough concerns for the child's mother that the child's mother turned the video over to police. Thus, in the context of this case, Vaughn's testimony that the investigation resulted in a "founded" disposition was not necessarily an "expression of one's personal opinion about the credibility of a witness." *Sperou*, 365 Or at 128. And it certainly was not "unambiguously a comment on D's credibility." 319 Or App at 337.

Second, at the time Vaughn testified that the DHS investigation resulted in a "founded" disposition, the evidentiary record was silent as to what was said to Vaughn by those whom she had interviewed, and was silent as to whether Vaughn interviewed D. At the time Vaughn testified that there was a "founded" disposition, one could infer that Vaughn did interview D, but that is not the only inference that could have been drawn.

Consequently, I would conclude that the error here, if any, was not plain, and I would affirm for that reason.[2]

---

[2] To be sure, there might be a case in which it is plain error to permit a DHS protective services caseworker to testify concerning the disposition of a DHS assessment. But, for the reasons expressed herein, this is not that case.