44 April 17, 2024 No. 234

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JERRY THOMAS WELLINGTON,
*Defendant-Appellant.*

Clackamas County Circuit Court
17CR09581; A177520

Ann M. Lininger, Judge.

Submitted October 27, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this criminal case, defendant appeals a judgment of conviction, after a jury trial, for 30 sexual offenses committed against defendant's stepson, J.[1] In his first two assignments of error, defendant argues that the prosecutor committed prosecutorial misconduct when he argued to the jury that the state could have requested that the grand jury charge defendant with more crimes but did not, and when he argued that the state could have but did not charge defendant with misdemeanor prostitution. In defendant's third assignment of error, he argues that the trial court erred by failing to *sua sponte* strike J's mother's "vouching" testimony. Defendant did not preserve his assignments of error, and he requests plain error review. For the reasons that follow, we affirm.

## I.  BACKGROUND

J, who was born in 1999, lived with his mother (Miller), defendant (his stepfather), his older brother, and his younger brother (C). J testified that, in 2009, after Miller and defendant separated, J stayed with defendant, who sexually abused J on "countless" occasions—sometimes once or twice a week, other times three to five times a week, and sometimes the abuse did not occur for long stretches of time. In summary, the incidents of abuse included hand-to-penis touching, mouth-to-penis touching, penis-to-anus touching, and touching each other's buttocks. The incidents of abuse occurred in defendant's bedroom on the bed, J's bedroom on the bed and floor, the dining room, the bathroom, and defendant's car.

There are two instances of abuse that are specifically relevant to defendant's assignments. When J was 12 years old, defendant paid him $50 to put his mouth on defendant's penis, which J did. Soon after that, defendant offered J $200 to have anal sex, but J declined. Defendant later offered J $100 to have anal sex, and J agreed.

In 2013, at age 14 and after a fight with defendant, J moved to Miller's home in Wyoming. The next year, when

---

[1] Defendant was convicted of 10 counts of first-degree sodomy, ORS 163.405 (Counts 1-2, 4, 9-10, 12, and 17-20); 16 counts of first-degree sexual abuse, ORS 163.427 (Counts 5-8, 13-16, 21-24, and 29-32); and four counts of second-degree sodomy, ORS 163.395 (Counts 25-28).

J was 15 years old, he told Miller that defendant had abused him, but she doubted him. In the fall of 2016, when J was 17 years old, he disclosed to a counselor that he had been abused, but he did not go into detail about the abuse. About a month later, during a group counseling session with his family,[2] J told Miller that he had been "molested and sexually abused" by defendant. A child protective services worker interviewed J at the local police station in Wyoming while a police officer was present. In January 2017, J gave a recorded statement to Clackamas County Sheriff Detective Geoff Erichsen; that interview was recorded and played at trial. Erichsen interviewed defendant, who denied any wrongdoing.

A grand jury indicted defendant on 32 counts of sexual abuse. Before trial, the state dropped two of the counts. At trial, the state presented J's recorded statement as well as the testimony of several witnesses. Defendant did not call any witnesses.

The court instructed the jury that the facts constituting each of the 30 counts must be a "[s]eparate, apart, and distinct incident." The court also instructed the jury that it must "[b]ase [its] verdict on the evidence and these instructions. The lawyers' statements and arguments are not evidence."

During the state's closing arguments, the prosecutor explained the evidence that corresponded to each of the 30 counts. The prosecutor explained that, even though the jury had heard testimony about many criminal acts, the state had to elect the facts that corresponded to each count:

"And I actually asked [J], detail it for me. And so he laid it all out for you again, probably more times than you wanted to hear, but, you know, we just wanted to make sure that you understood, A, how prevalent it was; and, B, we had information and evidence in the record that covered these counts, okay? And we do. And so that's why you'll notice that on a lot of these counts, I will say, incident in defendant's bedroom or incident in [J's] bedroom, because that's what he said, that's really where it happened the most.

---

[2] Miller, J's new stepfather (Miller remarried in Wyoming), and J's older brother were present at the counseling session.

"And then [J] was even able to break down some, you know, very specific details about specific incidents. And, you know, I've attached some of those to some of these counts, as well. You'll remember as we go along. *There were so many, though, and frankly, I could have, or we could have, or the—asked the grand jury to charge more counts. But we didn't, you know, we just stuck with the 32-count indictment.* Because there are some incidents that you'll remember and that I'll talk about that I haven't even used as an election in this particular case."

(Emphasis added.) Later, in describing the facts relating to two counts, the prosecutor noted that the state had not charged defendant with prostitution, even though the facts constituted that crime:

"And then Count 25, now we're at sodomy in the second degree, because he's now turned 12. And so it's the same conduct for Count 25. In defendant's bedroom for Count 26. In defendant's bedroom, that's the oral sex both ways. And these, you know, are separate incidents, though, that occurred.

"And if you recall, the—[J] says that once [he] started to turn 12, there was a period of time where it kind of wanes a little bit, it's not as prevalent, actually, we even take about a three-month break, it seems, right? And then it starts back up. Why? Because then [defendant] comes and he offers [J] $50 for [J] to put [his] mouth on [defendant's] penis. Right?

"And I think he says that actually happened in his bedroom, okay, so that certainly could be [J] put his mouth on defendant's penis for Count 25. And then if you recall, [defendant] comes to [J] a little bit later and offers him $200 for anal sex, and [J] says no. No, no way, no how, because of, you know, the second incident actually that happened at that time, you know, we haven't seen that yet.

"And then [defendant] comes to [J] later and says, well, how about a hundred dollars to just let me put it between the cheeks of your buttocks and rub there? Yes, [J] took that. And then [J] remembers another time where [defendant] offered [J] $50 for [J] to put his mouth on [defendant's] penis again. *So, I mean, now he basically is, you know—we didn't charge any misdemeanors, but he's now also committing the crime of prostitution.*"

(Emphasis added.) Immediately after the prosecutor made that statement, the prosecutor began discussing Count 27. Defendant did not object to the prosecutor's arguments, ask for a curative instruction, or move for a mistrial.

The jury found defendant guilty on all 30 counts. Defendant now appeals.

## II.   STANDARD OF REVIEW

Defendant requests that we review for plain error whether the prosecutor committed prosecutorial misconduct that deprived defendant of a fair trial when the prosecutor argued that (1) the state "could have" asked the grand jury to charge more counts, but did not, and (2) defendant "also commit[ted] the crime of prostitution." *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may, in its discretion, consider a plain error."). Defendant also requests that we review for plain error whether the trial court erred when it failed to *sua sponte* strike testimony by Miller that defendant argues constituted impermissible vouching.

For an error to be plain, the error must (1) be one of law; (2) be obvious and not reasonably in dispute; and (3) appear on the face of the record. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006) (citation omitted). A prosecutor's improper comments constitute legal error "only if they are so prejudicial that they deprived defendant of a fair trial." *State v. Chitwood*, 370 Or 305, 317, 518 P3d 903 (2022). Even if the error is plain, we must exercise our discretion whether to consider the error, and such a decision "should be made with utmost caution." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

## III.   DISCUSSION

A.  *Prosecutorial Misconduct in Closing Arguments*

In defendant's first two assignments of error, he argues that the state's arguments relating to uncharged offenses constituted prosecutorial misconduct, and that the trial court plainly erred by failing to *sua sponte* order

a mistrial based on the comments. According to defendant, the prosecutor's statements were improper and infringed on defendant's right to have an impartial jury and a fair trial pursuant to Article I, section 11, of the Oregon Constitution, the Sixth Amendment to the United States Constitution, and the Due Process Clause of the Fourteenth Amendment.

Relying on case law from other jurisdictions, defendant argues that the trial court committed prejudicial error, because the prosecutor's arguments implied that defendant received a "break" due to the state's decision to ask the grand jury to charge only 32 counts. According to defendant, the prosecutor's arguments invited the jury to believe that, because defendant could be guilty of uncharged crimes, it was more likely that he was guilty on the charged counts. Although Oregon appellate courts have not decided that such comments are an "obvious" error of law, defendant argues that, if the prosecutor's inappropriate arguments deprived defendant of a fair trial, the trial court's failure to, *sua sponte*, declare a mistrial is reversible error.

We are permitted to review for plain error a prosecutor's impermissible closing argument only when "the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *Chitwood*, 370 Or at 312. "In other words, prosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (emphasis in original). And "[g]enerally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct," *State v. Davis*, 345 Or 551, 583, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009) (citation omitted), because "we generally assume that a jury has followed a court's curative instruction unless there is an 'overwhelming probability that the jury was incapable of following the instruction.'" *State v. Harris*, 303 Or App 464, 467, 461 P3d 1080, *rev dismissed*, 367 Or 291 (2020) (quoting *State v. Garrison*, 266 Or App 749, 757, 340 P3d 49 (2014), *rev den*, 356 Or 837 (2015)).

"[I]n deciding a defendant's guilt or innocence, a jury may consider only facts properly received in evidence," and "a prosecutor may not encourage the jury to decide the case on an improper basis." *Chitwood*, 370 Or at 314 (citations omitted). Prosecutorial misconduct is defined as

> "'any activity by the prosecutor which tends to divert the jury from making its determination of guilt or innocence by weighing the legally admitted evidence in the manner prescribed by law. It commonly involves an appeal to the jurors' prejudices, fears, or notions of popular sentiment by presenting to them inadmissible evidence; or urging them to make inferences not based on the evidence; or to disregard the evidence altogether and base their determination on wholly irrelevant factors.'"

*State v. Brunnemer*, 287 Or App 182, 187-88, 401 P3d 1226 (2017) (quoting *State v. Smith*, 4 Or App 261, 264, 478 P2d 417 (1970)).

In *Chitwood*, during the state's rebuttal arguments, the prosecutor argued that "if [the jury] determine[s] that [the defendant] should not reside with an adolescent girl, that's [the jury's] moral certainty, and I have proven my case beyond a reasonable doubt." 370 Or at 308-09. In addition, the prosecutor, also on rebuttal, discussed statements that a potential juror had made during *voir dire* about a time when the juror was accused of sexual abuse, but a doctor determined that that allegation was false. *Id*. at 308. The prosecutor argued that the jury should look to that discussion from *voir dire* as an instance where a person "had been falsely accused of a sex crime and" the crime was "washed out because it was false. And this [charge] is not false." *Id*.

The Supreme Court determined that the prosecutor's arguments were impermissible and that they denied the defendant his right to a fair trial. The arguments were impermissible because they (1) raised facts not in evidence based on information the jury heard during *voir dire*, and (2) "distorted the burden of proof" by incorrectly describing how the jury could find by a "moral certainty" that the defendant was guilty beyond a reasonable doubt. *Id*. at 315-17. Through a combination of four bases, the court determined that the prosecutor's arguments were so prejudicial

that they deprived defendant of a fair trial: First, the prose-cutor misstated the state's burden of proof, which is "funda-mental to the American justice system." *Id*. at 317. Second, because the prosecutor made the remark during rebuttal arguments, the timing of the argument "exacerbated the risk that it would be prejudicial," particularly when the arguments "direct[ed] the jury away from the facts [and] toward emotion and risk of error." *Id*. at 318-20. Third, "the prosecutor compounded the error by referring to other irrel-evant matters that were not in evidence"—*viz*., the prosecu-tor's reference to a prospective juror's experience with sex-ual abuse allegations—because those references framed the information "in a new way" that gave "the jury permission to ignore defendant's fundamental right to proof beyond a reasonable doubt[.]" *Id*. at 320-21. Fourth, the court noted that the case was a close one, because it came down to a credibility contest between the defendant and the victim, and the jury had acquitted the defendant on 17 out of the 20 counts. *Id*. at 321.

As we have noted, a prosecutor's impermissible argu-ments are insufficient to permit plain error review unless they render the trial fundamentally unfair. In *Durant*, we determined that the prosecutor made statements during closing arguments that "were not ideal," when the prosecu-tor argued that

"[e]very person that's charged with a crime has the right to go to trial and have the state prove the case beyond a reasonable doubt. That's why we're here; Mr. Durant gets his day in trial.

"That does not mean that there is reasonable doubt. What that means is the process is working and that's why we're here today.

"There is no reasonable doubt in this case."

327 Or App at 367, 371. We determined that "[d]iscussing the state's burden of proof in terms of the *defendant's* right to a trial risks shifting the jury's attention from the state's evidentiary burden to the defendant's exercise of a constitu-tional right in a way that could be problematic[.]" *Id*. at 371 (emphasis in original). Nevertheless, we concluded that the prosecutor's statements "were not egregious[,]" because "[t]he

prosecutor did not misstate the law, denigrate anyone, improperly shift the burden of persuasion to defendant, or invite an adverse inference from defendant's exercise of a constitutional right." *Id*. We also noted that "the challenged statements here were brief," and "the prosecutor immediately transitioned into a substantive discussion of 'reasonable doubt' that no one disputes was legally accurate, *** thus drawing the jury's attention away from the initial comments and into substantive matters." *Id*. at 372. Based on the "content and context" of the prosecutor's statements, we decided that plain error review was not appropriate, because the comments were not "so prejudicial as to have denied defendant a fair trial." *Id*.

In this case, the prosecutor's arguments—that the state "could have" asked the grand jury to charge more crimes and that it did not charge any misdemeanors based on conduct constituting prostitution—were improper. Whether the state "could have" charged defendant with more crimes is "wholly irrelevant" to the jury's determination of defendant's guilt or innocence. *Brunnemer*, 287 Or App at 187-88 ("[Prosecutorial misconduct] commonly involves *** urging [the jury] to make inferences not based on the evidence; or to disregard the evidence altogether and base their determination on wholly irrelevant factors."). The prosecutor pointed out charges that were not at issue in a way that could have been understood as an appeal to convict defendant based on a lenient charging process, which is not a "fact[] properly received in evidence" that the jury could use to determine defendant's guilt or innocence. *Chitwood*, 370 Or at 314 (citations omitted).

Nevertheless, the prosecutor's statements were not so prejudicial that they denied defendant a fair trial, and the trial court was not legally required to *sua sponte* declare a mistrial based on those comments. In *Chitwood*, one of the main problems with the prosecutor's arguments on rebuttal was that the prosecutor used facts not in evidence to convince the jury of the defendant's guilt. In this case, however, the prosecutor's comments did not refer to underlying acts by defendant that were different from information that the jury had already heard—*i.e.*, J testified about other

instances of abuse that the state did not charge, and the jury watched an interview in which J discussed other instances of abuse. As in *Durant*, "[t]he prosecutor did not misstate the law, denigrate anyone, improperly shift the burden of persuasion to defendant, or invite an adverse inference from defendant's exercise of a constitutional right." 327 Or App at 371. And when viewed in context, the jury more likely would have understood the prosecutor's statements as an effort to distinguish the evidence that the jury heard from the charges at issue, not as an invitation to base its verdict on the leniency of the charging process. In addition, based on the admitted evidence, the jury likely would have understood that the state could have charged defendant with other crimes, and that the state could have charged defendant with prostitution, because the colloquial definition of that crime is a point of common knowledge, and the jury heard evidence that defendant offered J money to commit sexual acts. *See State v. Miller*, 327 Or App 740, 753, 537 P3d 191, *rev den*, 371 Or 715 (2023) (determining that the prosecutor's argument as to "delayed disclosure" in child sex abuse is a "basic concept" and "is arguably approaching the point of common knowledge, or at least could be understood as something that could be referenced in broad terms in a case like this one").

Therefore, we are not persuaded that the prosecutor's two statements were so prejudicial that the trial court could not have stricken them and, instead, was required to declare a mistrial. When viewed in context, the jury was not likely to have understood the prosecutor's comments to go beyond guiding the jury through 30 distinct counts and explaining the elections that the state made for each charge. Because the jury heard evidence of other crimes, the prosecutor had reason to ensure that the jury found defendant guilty on each count based on the evidence that corresponded with each charge pursuant to the state's elections. Even if the prosecutor's statements to that end were objectionable in the manner in which they were made, we are persuaded that they were curable, particularly given the context in which the prosecutor made the statements. Given that determination, defendant has not established plain error.

B. *Vouching*

Defendant next argues that the trial court plainly erred in failing to *sua sponte* strike Miller's testimony that defendant argues was vouching, and defendant requests that we exercise our discretion to review that error. The testimony began with Miller describing the first time that J disclosed the abuse to her. Miller said that she asked J, "What are you trying to tell me?" And she told him, "Please, I need to hear it from you." Miller testified that J responded, "You just need to get me into counseling[.]" Miller testified that she offered, "How about if I have you talk to \*\*\* the father of the church that I used to go to?" Then, Miller testified,

> "And [J] says, 'If you can't help me get into counseling, then there's no point in you'—and he stops and says, 'Obviously you don't trust me.'
>
> "*That wasn't the case*. The case—the fact is that if I would have known anything was going on, we probably wouldn't be here today. This probably would have been handled years ago. I'm scared to death to lose any of my children."

(Emphasis added.) Defendant argues that Miller's testimony—"that wasn't the case"—was impermissible vouching.

"'Vouching' refers to the expression of one's personal opinion about the credibility of a witness." *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019) (citation omitted). Witness testimony regarding the veracity of another witness "invade[s] the jury's role as the sole judge of the credibility of another witness." *State v. Charboneau*, 323 Or 38, 47, 913 P2d 308 (1996) (citation omitted). "The rule against vouching prohibits a witness from making a direct comment, or one that is tantamount to a direct comment, on another witness's credibility." *State v. Murphy*, 319 Or App 330, 335, 510 P3d 269 (2022) (citation and internal quotation marks omitted). Whether a statement constitutes vouching depends on the context in which it arose and the context of how it was offered at trial. *See Sperou*, 365 Or at 128 ("[C]ertain statements might be vouching in some contexts but not others.").

When we are called upon to address an unpreserved claim of error regarding vouching, "our first task is to assess the challenged testimony to determine whether the witness unambiguously vouched, may or may not have vouched (ambiguous), or unambiguously did not vouch." *Murphy*, 319 Or App at 335 (citation omitted). When a witness unambiguously vouches for another witness, we have held that a trial court must strike that testimony. *State v. Corkill*, 262 Or App 543, 552-53, 325 P3d 796, *rev den*, 355 Or 751 (2014). Thus, it is plain error for a trial court not to strike testimony when unambiguous vouching testimony occurs. *Id*. But if the witness's testimony may not have been vouching, failing to strike that testimony is not plain error. *Murphy*, 319 Or App at 335-36.

When Miller's testimony is read in context, it is, at most, ambiguous vouching testimony. It is not clear that Miller's testimony was a comment on J's credibility as to the allegations. *See State v. Coats*, 312 Or App 213, 216, 491 P3d 89, *rev den*, 368 Or 560 (2021) ("Given the qualified nature of the statement and its apparent reference to the past, it is not plain that the statement was impermissible vouching."). It was more likely interpreted by the jury as an expression by Miller that, had her son opened up to her, Miller would have supported him. The jury also could have understood the testimony as explaining that she did not know about the abuse but trusted J's need for counseling, or as an explanation for why she had not addressed J's allegations sooner. *See State v. Hunt*, 270 Or App 206, 213, 346 P3d 1285 (2015) ("Viewed in context, the statement does not comment on [the victim's] credibility but, instead, explains why [the witness] did not more intensely question [the victim] about defendant's physical attributes."). In any of those scenarios, the testimony did not amount to vouching.

Thus, we conclude that the challenged testimony was not unambiguously vouching and that the legal point, therefore, is not obvious and is reasonably in dispute. For that reason, we conclude that any error in failing to *sua sponte* correct the asserted error is not plain.

Affirmed.