792 April 16, 2025 No. 348

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEPHAN BLEU MARLATT
*Defendant-Appellant.*

Josephine County Circuit Court
20CR06460; A179889

Robert S. Bain, Judge.

Submitted November 25, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

HELLMAN, J.

Affirmed.

------------

* Lagesen, Chief Judge *vice* Mooney, Senior Judge.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for first-degree murder, ORS 163.107, and unauthorized use of a vehicle, ORS 164.135. On appeal, defendant raises two assignments of error. We affirm.

*Vouching.* In his first assignment of error, defendant argues that the trial court plainly erred by failing to strike, *sua sponte*, a detective's testimony on cross-examination concerning an informant, Hermes.

"[DEFENSE COUNSEL]:   Okay. Do you recall when you received the kite that you got to talk to him, Mr. Hermes, when you went and talked to him on the 20th?

"[THE DETECTIVE]:   Well I can tell you that it was, I think, well I think it was on the, it probably was on the same day or around the same day because what had happened was, once I got that kite, I went down there and Mr. Hermes provided me with some information that I did not know how he had come about this information, so I believe I contacted [the lead detective on defendant's case] right away and I inquired as to what the information was to me. *When it started sounding like it was getting, like the information he was providing to me was, was credible in my opinion,* then I stopped going any further because it was not proper for the lead investigator not to be there. So what I would say to you is that if, if it wasn't the exact same day of the, of the 20th of December, it was, it had to be right around that same time."

(Emphasis added.) The parties dispute whether the detective's statement, "it started sounding like it was getting, like the information he was providing to me was, was credible in my opinion," constituted "unambiguous vouching" and accordingly whether there was plain error.

We "may consider errors that were not properly preserved or raised if they constitute 'plain error.'" *State v. Wiltse*, 373 Or 1, 5, 559 P3d 380 (2024). A plain error "must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring [us] to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If we conclude that an error

is plain, then we must "determine whether to exercise [our] discretion to review the error." *Id.* at 630.

"[I]t is plain error for a trial court not to strike testimony when unambiguous vouching testimony occurs. But if the witness's testimony may not have been vouching, failing to strike that testimony is not plain error." *State v. Wellington*, 332 Or App 44, 55, 548 P3d 146, *rev den*, 373 Or 81 (2024) (citations omitted). Thus, "our first task is to assess the challenged testimony to determine whether the witness unambiguously vouched, may or may not have vouched (ambiguous), or unambiguously did not vouch." *Id.*; *see also State v. Chandler*, 360 Or 323, 331 n 3, 380 P3d 932 (2016) (explaining that the "vouching rule" "applies both to comments that bolster and to comments that undermine a witness's credibility"). As relevant here, "certain statements might be vouching in some contexts but not others. Accordingly, it is important to consider each statement in the context in which it was made." *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019); *see also State v. Corkill*, 262 Or App 543, 544, 325 P3d 796, *rev den*, 355 Or 751 (2014) ("In evaluating whether the trial court plainly erred *** we must consider the entire context in which the challenged questions were asked.").

We conclude that any error is not plain. Here, Hermes testified that defendant told him that defendant had committed murder. According to Hermes, he then contacted the detective assigned to his case and provided information. Immediately after Hermes testified, the detective testified. On direct examination, the detective stated that he was the "lead investigator" on Hermes's case and that he was neither the lead investigator nor "focused on" defendant's case. On cross examination, the detective stated that "it started sounding like it was getting, like the information he was providing to me was, was credible in my opinion, then [the detective] stopped going any further because it was not proper for the lead investigator not to be there."

We conclude that it is "reasonably in dispute" that— when viewed in context—the detective's testimony was intended to provide context for why he stopped interviewing Hermes and contacted the lead investigator on defendant's

case, rather than to bolster Hermes's credibility. Therefore, the trial court did not plainly err. *Wellington*, 332 Or App at 55 (concluding that, when viewed in context, "the challenged testimony was not unambiguously vouching and that the legal point, therefore, is not obvious and is reasonably in dispute"); *see also Waldorf v. Premo*, 301 Or App 572, 579, 457 P3d 298 (2019), *rev den*, 366 Or 451 (2020) (explaining that the "vouching rule does not apply to statements regarding credibility if offered for a relevant non-opinion purpose" (internal quotation marks omitted)); *see also Chandler*, 360 Or at 334 ("[A] court does not err in admitting an out-of-court statement as to the credibility of a witness or nonwitness complainant if the statement is offered for a relevant, non-opinion purpose.").

*Aggravated murder.* In his second assignment of error, defendant argues that the trial court erred "by denying [his] motion to amend the name of the crime in the indictment from aggravated murder to first-degree murder." The state responds that the error was harmless. We agree with the state's argument.

"If error is harmless, this court is required to affirm a defendant's conviction even when a trial court commits error; and error is harmless if there is little likelihood that the error affected the verdict or substantially affected the defendant's rights." *State v. Garcia*, 284 Or App 357, 363, 392 P3d 815, *rev den*, 361 Or 645 (2017); *see also State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) ("Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?"). "[W]hen we review the record, we do so in light of the error at issue." *Davis*, 336 Or at 32.

We have reviewed the record and disagree with defendant's argument that the error was "likely to inflame the passion of the jury." In its closing argument, the state explained that, to find that defendant committed aggravated murder, the jury was required to find that defendant had committed first-degree burglary: "Okay, we need the burglary in the first degree, that, that's why it's aggravated murder." Further, the trial court instructed the jury:

> "Oregon law provides that a person commits the crime of aggravated murder if that person intentionally causes the death of another human being under, or accomplished by certain defined circumstances. A person commits the crime of aggravated murder if that person acting either alone or with one or more persons, commits the crime of burglary in the first degree, and in the course of and in furtherance of the crime, the person is committing, or during the immediate flight therefrom, he personally and intentionally causes the death of a person other than one of the participants."

Moreover, as the state argues on appeal, "[d]efendant does not contend that the trial court erroneously instructed the jury as to the *elements* of defendant's crime." (Emphasis in original.) Therefore, we conclude that the error was harmless because it had "little likelihood" of affecting the verdict. *Davis*, 336 Or at 32 ("[I]f the particular issue to which the error pertains has no relationship to the jury's determination of its verdict, then there is little likelihood that the error affected the verdict.").

Affirmed.